## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RONALD KEITH BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-06-102-C |
| | ) | |
| | ) | |
| PAULA HOWARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Bill Citty (Dkt. No. 24), to which Plaintiff did not file a response. Accordingly, the motion is ripe for disposition. The remaining defendants have filed an Answer to Plaintiff's Complaint (Dkt. No. 21). References in this Order to "Defendant" refer to Defendant Citty only. The Court, upon consideration of the litigants' submissions and the applicable law, now GRANTS Defendant's Motion for Summary Judgment and DISMISSES Plaintiff's claims against the remaining Defendants Howard, Moore, Yust, Wooliver, Hendricks, Pardon, Young, and Bennett.

## I. STANDARD OF REVIEW

Plaintiff did not file a response to Defendant's April 4, 2006, Motion for Summary Judgment within the eighteen days allotted by local rule, see LCvR7.2(f), nor did he file a Rule 56(f) affidavit demonstrating why he could not yet present evidence in opposition to the motion. Defendant's motion is deemed confessed due to Plaintiff's failure to respond.

LCvR7.2(f).  Even without a response from Plaintiff, the Court still must determine whether judgment for the moving party is appropriate under Fed. R. Civ. P. 56.[1]  Reed v. Bennett, 312 F.3d 1190, 1193 (10th Cir. 2002).  When a nonmoving party does not respond to a motion for summary judgment, he "waives the right to respond or to controvert the facts asserted in the summary judgment motion.  The court should accept as true all material facts asserted and properly supported . . . .  But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."  Reed, 312 F.3d at 1195.

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it is essential to the proper disposition of the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings

---

[1]Although a pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys, Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), this does not relieve the nonmoving Plaintiff from carrying his burden in defeating a motion for summary judgment.

themselves." <u>Celotex</u>, 477 U.S. at 324.   "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 672 (10th Cir. 1998).   All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Plaintiff brought the present action pursuant to 42 U.S.C. § 1983 asserting that his federal constitutional rights were violated by employees of the Oklahoma City Police Department (OCPD). Plaintiff has sued each defendant in both individual and official capacities seeking damages, injunctive relief, and declaratory relief.

Plaintiff's pro se complaint was premised on alleged actions of police department employees in apprehending and arresting Plaintiff following a high-speed automobile chase. For purposes of consideration of Defendant's motion, the following facts are deemed uncontroverted.

On May 6, 2005, members of the OCPD responded to a call regarding an armed robbery of a 7-11 store on Pennsylvania Avenue in Oklahoma City.  Acting upon the store clerk's description of the robber's appearance and of the suspect's vehicle, OCPD officers attempted a traffic stop of Plaintiff in his automobile.  Plaintiff stopped his vehicle at one point and placed his hands out of the window.  However, he then restarted the car in spite of the officers' instructions and accelerated with police vehicles in pursuit.  (Compl., Dkt. No.

1, ¶ 8; Def.'s Br., Dkt. No. 24, Ex. 21.)  At one point, an adult female passenger "bailed out"

of the car and was taken into custody by OCPD officers.  (Def.'s Br. Exs. 22, 25, 27, 29.)

The chase of Plaintiff continued on both city streets and on the interstate until Plaintiff

exited his car and continued on foot on Hudson Avenue.  While the officers attempted to

arrest Plaintiff, who was running away from them across N.W. 25th Street, Plaintiff was

struck by Officer Howard's police vehicle.  (Compl. ¶ 12; Def.'s Br. at 5 & Exs. 21, 25.)

Officer Howard is an OCPD Master Sergeant who completed her police training in 1988.

Officer Howard applied her vehicle's brakes and according to eyewitnesses she was unable

to avoid making contact with Plaintiff when he ran in front of her car.  (Def.'s Br. Exs. 21,

24, 25.)  The police car's left front tire rolled over Plaintiff, but Plaintiff remained conscious.

(Def.'s Br. Ex. 25.)  Officer Howard then moved her vehicle forward, stopped, and exited

to administer aid to Plaintiff.  (Def.'s Br. Ex. 25.)  Plaintiff was handcuffed because the

officers did not know if he was still carrying the weapon used in the 7-11 robbery.  (Def.'s

Br. Ex. 25.)  Plaintiff was immediately transported to the hospital for treatment; he remained

uncooperative and refused to identify himself.  (Def.'s Br. Exs. 20, 25.)  Plaintiff was

ultimately convicted of armed robbery and aggravated attempt to elude.  (Def.'s Br. at 4 &

Exs. 17, 18.)

Each of the officers involved in the pursuit of Plaintiff submitted a report describing

this incident.  According to the officers, Plaintiff disregarded police requests, traffic lights,

and stop signs throughout the chase.  (Def.'s Br. Exs. 21, 22, 25.)  In addition, Officer

Howard's superiors, including Defendant Citty, reviewed her actions, and the OCPD issued

an official report.  Plaintiff claims that Officer Howard purposely struck him with her police

vehicle.  (Compl. ¶¶ 11, 17-18, 23.)  Eyewitnesses and the OCPD, however, determined the

automobile-pedestrian collision was caused by Plaintiff's violation of traffic laws when

crossing the street in the path of Officer Howard's vehicle.  (Def.'s Br. at 5 & Exs. 19, 21.)

## III.  CONSTITUTIONAL CLAIMS

Plaintiff has failed to set forth any specific facts that would convince a rational trier

of fact that he suffered a constitutional violation prior to, during, or after the incidents of May

6, 2005.[2]  Therefore Defendant Citty is entitled to summary judgment on all constitutional

claims.

A.      *Events of May 6, 2005*

1.      Excessive Force

Under Supreme Court and Tenth Circuit precedent, "*all* claims that law enforcement

officers have used excessive force – deadly or not – in the course of an arrest, investigatory

stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and

its 'reasonableness' standard, rather than under a 'substantive due process' approach."

Graham v. Connor, 490 U.S. 386, 395 (1989).  The Supreme Court offered the following test

to determine the reasonableness of the stop:  "[d]etermining whether the force used to effect

---

[2]Defendant asserts qualified immunity as a defense to claims against him in his individual capacity.  "This defense shields government officials performing discretionary functions from liability 'if their conduct does not violate clearly established rights of which a reasonable government official would have known.'"  Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation omitted).  Because Plaintiff fails to present a genuine issue regarding a constitutional violation, it is not necessary to examine whether Defendant would be entitled to qualified immunity.

a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (citation and internal quotation marks omitted).

Defendant Citty presents numerous reports describing the incident as unintentional and unavoidable. "The presence of factual disputes, however, will preclude granting of summary judgment only if the disputes are genuine and concern material facts. We must look to substantive law to identify which facts are material." Watson v. City of Kansas City, 857 F.2d 690, 694 (10th Cir. 1988) (citation omitted).

Here, it is technically true that deadly force was used in the form of Officer Howard's police vehicle. This situation varies from a typical excessive force claim, however, because Plaintiff has presented no genuine fact issues as to whether Officer Howard *intentionally* used force to gain control over Plaintiff. See Brower v. County of Inyo, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."). Plaintiff offers no evidence that Officer Howard moved her car in order to "seize" Plaintiff and stop his movements. There is no evidence to indicate that the events of May 6, 2005, did not transpire just as the OCPD officers described them, i.e., that Plaintiff ran in front of Officer Howard's moving car and she was unable to avoid striking him.

Plaintiff provides no evidence to controvert the OCPD's contention that his injuries were accidental, so it is not necessary to conduct a "reasonableness" examination. Excessive force claims "are necessarily predicated on intentional conduct." Oliveros v. Mitchell, 449

6

F.3d 1091, 1095 (10th Cir. 2006).  The Supreme Court has held that there can be no

excessive force nor unreasonable seizure absent willful government conduct.  E.g., Brower,

489 U.S. at 596.  Because Plaintiff has not pointed to any evidence or reasonable inferences

therefrom which could lead a jury to find that Officer Howard willfully struck him with her

vehicle, he fails to establish that a constitutional violation occurred.

       2.       Failure to Train and Supervise

Plaintiff alleges a Fourth Amendment claim that Defendant failed to adequately train

and supervise OCPD officers in the use of force.  A municipality's failure to train generally

is not sufficient to prove a constitutional violation; there must be a "predicate showing" that

municipality employees used excessive force against a plaintiff.  Myers v. Okla. County Bd.

of County Comm'rs, 151 F.3d 1313, 1317 (10th Cir. 1998).  Then, a plaintiff may use the

municipality's failure to train as evidence that municipal policy or custom was the "moving

force" behind that previously established constitutional violation.  Id. at 1317.  As explained

above, Plaintiff fails to make this predicate showing of excessive force.  Additionally,

Plaintiff offers no evidence that Officer Howard or any of the individual officers present on

May 6, 2005, was deficiently trained or that Defendant had knowledge of any ill-trained

officers.  Thus, Plaintiff's failure to establish an excessive force claim also forecloses his

failure to train claim.

B.     *Events Following May 6, 2005*

Liberally construing Plaintiff's complaint, Plaintiff appears to allege that a

constitutional violation resulted from the OCPD's unofficial custom or policy of using law

enforcement vehicles to murder and attempt to murder "black criminal suspects," and then filing false reports to cover up the misconduct. (Compl. ¶¶ 19-21.) Absent an underlying constitutional violation, Plaintiff's own experience does not support a claim that either Defendant Citty or the OCPD is liable for a constitutional violation that resulted from this policy or custom.

Plaintiff offers only a list of names of five alleged victims to reinforce this allegation regarding black criminal suspects. (Compl. ¶ 19.) Defendant notes in his Motion for Summary Judgment that only two of the people listed are known to have been apprehended by the OCPD. (Def.'s Br. at 12-13.) Another person listed by Plaintiff was killed in an incident with a Deputy County Sheriff, not the OCPD. It is not clear what Plaintiff alleges regarding the other two people. Plaintiff does not offer any specific facts that show any of these five people was a victim of murder or attempted murder by the OCPD. Therefore, Defendant and the OCPD cannot be held liable on account of any unconstitutional custom regarding black criminal suspects.

Plaintiff further alleges that Defendant participated in a cover-up of the true events in collecting and reviewing the reports of OCPD officers. Plaintiff claims that Officer Howard intentionally struck him with her police vehicle (Compl. ¶ 11), but that Defendant "authorized, condoned, and conspired to cover-up" Howard's acts of May 6, 2005. (Compl. ¶¶ 20-21.) However, Plaintiff offers no evidence of this assertion beyond his conclusory statement. The OCPD employees involved each admitted and described their participation in the events via written reports. Additionally, the OCPD compiled an official Traffic

8

Collision Report.  As noted above, these detailed reports do not deny the incident but indicate that contact was made unavoidably.  (Def.'s Br. Exs. 19, 24, 25.)  None of these reports suggests any mistakes or malice on the part of Officer Howard.

Defendant Citty denied reviewing these reports.  (Answer, Dkt. No. 23, ¶ 13.)  Even if proven, Defendant Citty's alleged "tacit authorization" of these officers' actions would be inadequate in a § 1983 suit to show that the OCPD has a policy of covering up police misconduct.  Cf. Barton v. City & County of Denver, 432 F. Supp. 2d 1178, 1210-11 (D. Colo. 2006) (dismissing § 1983 claim of unconstitutional policy of covering up officers' misconduct, when plaintiff's only evidence was the disposition of plaintiff's complaint, newspaper articles plaintiff read about other alleged victims of police misconduct, and plaintiff's own conjecture).  As Plaintiff has presented no evidence to controvert the authenticity or veracity of these reports, no rational trier of fact could find that a genuine material fact issue remains and so Plaintiff's claim must fail.

Plaintiff requests prospective injunctive relief to protect himself from retaliatory action due to his filing of this lawsuit.  Plaintiff also requests an injunction ordering the OCPD to formulate new training, supervision, investigatory, and disciplinary policies. Defendant rightfully notes that Plaintiff lacks standing to sue for an injunction under City of Los Angeles v. Lyons, 461 U.S. 95 (1983), because Plaintiff fails to establish "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law."  Id. at 103.  "The threatened injury must be 'certainly impending' and not merely speculative." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004).  Plaintiff pleads no facts to

indicate he is threatened with retaliatory action from Defendant Citty or the OCPD, and he has not established that he has suffered a constitutional violation due to any unconstitutional custom or policy.  He is not entitled to injunctive relief.

## IV. STATE LAW CLAIMS

In addition to filing claims for relief under § 1983, Plaintiff's complaint, broadly construed, suggests violations of Oklahoma state tort law.  Plaintiff's sole tort remedy to recover against a governmental entity is The Oklahoma Governmental Tort Claims Act (the Tort Claims Act), 51 Okla. Stat. § 151, *et seq.*  Nail v. City of Henryetta, 1996 OK 12, ¶ 10, 911 P.2d 914, 917.

However, in order to invoke the provisions of the Tort Claims Act, a plaintiff must file a written claim with the political subdivision within one year of the date the loss occurs. 51 Okla. Stat. § 156.  A claim under the Tort Claims Act is deemed forever barred "unless notice thereof is presented within one (1) year after the loss occurs." Id.  A plaintiff may not sue the political subdivision unless the claim has been denied in whole or in part, or deemed denied by the passage of time.  51 Okla. Stat. § 157.  "No action . . . shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim . . . ." Id.

According to the record, Plaintiff failed to present any claim or notice thereof to the OCPD within one year of his alleged tort injuries.  Therefore, his state law claims are forever barred and should be dismissed.

10

## V. PLAINTIFF'S COMPLAINT

Under 28 U.S.C. § 1915(e)(2)(B)(i),[3] the Court has the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989) (construing former § 1915(d)); Frazier v. Dubois, 922 F.2d 560, 562 & n.1 (10th Cir. 1990) ("[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional [violations] will not suffice; plaintiffs must rather allege specific facts . . . ."). This frivolousness determination is "frequently made *sua sponte,*" and the Court "is not bound . . . to accept without question the truth of the plaintiff's allegations." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

While § 1915 allows litigants such as Plaintiff to file *in forma pauperis*, it authorizes federal courts to dismiss claims that are founded on meritless legal theory or claims with baseless factual contentions. Even liberally construed, Plaintiff's factual contentions clearly lack any arguable basis, because he offers no evidence that he has suffered any constitutional violation. As discussed above, Plaintiff's wholly unsupported claims against all of the defendants describe a "fantastic or delusional scenario[]," and so the Court is authorized to dismiss them. Neitzke, 490 U.S. at 328.

---

[3] Section 1915(e)(2)(B)(i) reads: "Not withstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."

## VI. CONCLUSION

Defendant Citty's Motion for Summary Judgment (Dkt. No. 24) is GRANTED. Judgment will be entered accordingly.

Because the Court has determined that Plaintiff's claims are frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

IT IS SO ORDERED this 27th day of September, 2006.

ROBIN J. CAUTHRON
United States District Judge